74 F.3d 377
 S. KADIC, on her own behalf and on behalf of her infant sons
Benjamin and Ognjen, Internationalna Iniciativa
Zena Bosne I Hercegovine "Biser," and
Zene Bosne I Hercegovine,
Plaintiffs-Appellants,
v.
Radovan KARADZIC, Defendant-Appellee.
Jane DOE I, on behalf of herself and all others similarly
situated; and Jane Doe II, on behalf of herself and as
administratrix of the estate of her deceased mother, and on
behalf of all others similarly situated, Plaintiffs-Appellants,
v.
Radovan KARADZIC, Defendant-Appellee.
 Nos. 1541, 1544, Dockets 94-9035, 94-9069.
 United States Court of Appeals,
Second Circuit.
 Petition for Rehearing Submitted
Nov. 15, 1995.
Decided Jan. 6, 1996.
 
 Before NEWMAN, Chief Judge, FEINBERG and WALKER, Circuit Judges.
 JON O. NEWMAN, Chief Judge:
 
 
 1
 The defendant-appellee's petition for rehearing calls our attention to an interesting law review article not previously cited to us. See Joseph Modeste Sweeney, A Tort Only in Violation of the Law of Nations, 18 Hastings Int'l & Comp.L.Rev. 445 (1995). Professor Sweeney's article endeavors to explore the proper interpretation of the phrase "tort only" in the Alien Tort Act. It concludes that the statute, as enacted in 1789 by the 1st Congress, was intended to authorize federal court jurisdiction for only one limited category of torts--torts committed in violation of the law of nations by the crews of vessels in the course of stopping and boarding ships believed to be aiding the enemy in time of war. Such torts, Professor Sweeney maintains, were litigated before 1789 in state courts exercising admiralty jurisdiction, including "prize jurisdiction," the authority to adjudicate whether a captor has lawfully seized a ship and its cargo as a prize. After Article III of the Constitution extended the judicial power of the United States to admiralty cases, U.S. Const. art. III, Sec. 2, Congress enacted the provisions of the First Judiciary Act that are now 28 U.S.C. Sec. 1333 (1988) to make that jurisdiction exclusive (except for "saving to suitors" cases in which plaintiff may bring certain maritime claims in state court). But, Professor Sweeney continues, Congress adopted the language that is now 28 U.S.C. Sec. 1350 (1988) to make clear that the jurisdiction of the new federal courts to remedy torts committed against aliens in violation of the internationally recognized law of prize would be exercised by the federal courts concurrently with the state courts. In his view, the language that is now section 1350 extended only to this one category of torts.
 
 
 2
 Professor Sweeney's argument is interesting, but far from conclusive. See William S. Dodge, The Historical Origins of the Alien Tort Statute: A Response to the "Originalists", 19 Hastings Int'l & Comp.L.Rev. 221 (forthcoming 1996). Notably absent is any contemporaneous indication from the likely draftsman of the key language, Oliver Ellsworth, or from any other member of the 1st Congress, that their broad statutory language "any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States" was intended to apply to only one category of torts. Even if the tort of wrongfully boarding in time of war a ship suspected of aiding the enemy was the tort that prompted the 1st Congress to create federal court jurisdiction for aliens suffering damages in violation of the law of nations or a treaty of the United States, it does not follow that the statute should be confined to this tort. Statutes enacted with one object in the legislative mind are frequently drafted in broad terms that are properly applied to situations within both the literal terms and the spirit of the statute, though not within the immediate contemplation of the drafters. See, e.g., 42 U.S.C. Sec. 1985(3) (1988) (part of so-called "Ku Klux Klan Act" of 1871, creating damage remedy for injury by those who "conspire, or go in disguise on the highway" for purpose of denying "equal protection of the laws"); see also Keating v. Carey, 706 F.2d 377, 386-88 (2d Cir.1983).
 
 
 3
 In any event, however we might have construed the Alien Tort Act in a case arising in 1789, two circumstances guide our interpretation two hundred years later. First, Filartiga v. Pena-Irala, 630 F.2d 876 (2d Cir.1980), has established as the law of this Circuit that the Alien Tort Act has a broad scope and that courts ascertaining the content of the law of nations "must interpret international law not as it was in 1789, but as it has evolved and exists among the nations of the world today." Id. at 881. We have neither the authority nor the inclination to retreat from that ruling. Second, Congress has made clear that its enactment of the Torture Victim Protection Act of 1991 was intended to codify the cause of action recognized by this Circuit in Filartiga, even as it extends the cause of action to plaintiffs who are United States citizens. See H.R.Rep. No. 367, 102d Cong., 2d Sess., at 4 (1991), reprinted in 1992 U.S.C.C.A.N. 84, 86. With a broad reading of the Alien Tort Act settled as the law of this Circuit and codified by Congress as recently as 1991, we decline the invitation to limit the Act to the one category of torts that arguably prompted its enactment.
 
 
 4
 The petition for rehearing is denied.